# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 462 | **DATE** | 10/9/2001 |
| **CASE TITLE** | TINA M. OENNING vs. CAREMARK, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The motion for summary judgment [17-1] is granted in part. Judgment is entered for defendant Caremark and against plaintiff Tina M. Oenning on her hostile work environment sexual harassment claim. The motion is denied on the retaliation claim. The joint final pretrial order and agreed jury instructions shall be presented on October 31, 2001 at 9:00 a.m. Plaintiff's draft shall be submitted to defendant by October 23, 2001. The case is set for trial on November 19, 2001 at 9:00 a.m. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **Document Number** |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 11 2001 | | 30 |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | CM | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 10/9/2001 | | |
| SB | courtroom deputy's initials | FOR DOCKETING 01 OCT 10 PM 4: 46 | date mailed notice | | |
| | | Date/time received in central Clerk's Office | CB mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TINA M. OENNING | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 C 462 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| CAREMARK, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Tina M. Oenning sues Caremark, Inc. ("Caremark") for hostile work environment sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Caremark moves for summary judgment under Fed. R. Civ. P. 56.

## BACKGROUND

### A. Rule 56.1 Responses and Statement of Additional Facts

Oenning's Rule 56.1 responses to Caremark's statement of material facts include denials without citation to any affidavits or documents. All relevant facts denied without supporting documentation must be accepted as true. *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 518-19 (7th Cir. 1992); Local Rule 56.1. Accordingly, ¶¶ 15 and 17 are treated as admissions. In addition, Oenning's denials cite to documents that do not support the conclusion asserted. On that basis, ¶¶ 14, 16, 21, 30, 34, and 35-38 are treated as admissions.

**B.     The Facts**

All facts are undisputed unless otherwise noted.  Oenning is an employee of Matthews Employment Agency ("Matthews").  Caremark is a mail order pharmacy located in Lincolnshire, Illinois.  In December 1999, Matthews assigned Oenning to Caremark as a materials handler. Oenning reported to Rick Coates, supervisor of the materials department.  Shortly after Oenning started at Caremark, Brissio Rosales, another Matthews employee, was assigned to the same department.

On January 20, 2000, Coates witnessed Oenning sitting on the lap of Jeff Murphy, a male Caremark employee.  The incident occurred during working hours.  Coates informed Oenning and Murphy their conduct was unacceptable.  Velma Gordon, manager of human resources, was out of the office from January 18 to January 26, 2000.  When Gordon returned to Caremark, Coates reported the incident.  On January 27, 2000, Gordon discharged Oenning.  Murphy received a written warning.  That same day, Caremark's human resources department notified Matthews that Oenning was discharged.

On January 24, 2000, four days after Coates witnessed Oenning on Murphy's lap, Oenning informed Caremark she was sexually harassed in the materials department.  Specifically, Oenning complained Rosales blew kisses at her, flailed his tongue near her face, called her "grande panocha," and wrote that word three times on boxes in the warehouse.  Oenning claimed grande panocha is a sexually explicit term in Spanish.  On that day, Oenning claimed Rosales made humping actions from behind, pretending to have sex with her.  He asked her if she had "a tight pussy."  Pl. 56.1 Resp. at ¶ 29; Def. Ex. 2 at 65-66.  Although Rosales' conduct extended over two months, Oenning did not complain until January 24, 2000.  Oenning asserts she was intimidated, she did not believe

2

the conduct "was that bad," she believed Rosales' behavior would halt, and she expected Rosales would be fired. Def. 56.1 Facts at ¶ 32.

On January 28, 2000, Coates informed Gordon of Oenning's allegations. Gordon instructed Coates to conduct a preliminary investigation to determine if the allegations had merit. Coates questioned Rosales, who denied making any inappropriate comments or gestures. Coates reminded Rosales of Caremark's sexual harassment policy. In addition, Coates questioned Oenning's co-workers. Unable to confirm the allegations, Coates informed Gordon of the results. Gordon then instructed Coates to meet with all employees in the materials department and reiterate Caremark's sexual harassment policy. Coates conducted that meeting on January 28, 2000.

Caremark's sexual harassment policy prohibits "not only conduct and language that constitute unlawful harassment as defined by courts, but all inappropriate behavior having deemed harassment under this policy." Def. 56.1 Facts at ¶ 14. Caremark displayed a poster in its cafeteria entitled "Illinois Law Prohibits Sexual Harassment." That poster explained the steps an employee should take if she were sexually harassed by other employees. Caremark also displayed a poster entitled "Integrity Starts With You," which listed the Caremark 800-number helpline for employees. Under Caremark's policy, temporary workers who violate Caremark's rules are terminated from their assignments without any progressive discipline or prior disciplinary warning.

After her termination, Oenning filed a charge of discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"). On October 20, 2000, the EEOC issued Oenning a right to sue notice.

3

# DISCUSSION

## I.     Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome often depends on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

## II.     Hostile Work Environment Sexual Harassment

Title VII's prohibition against sex discrimination protects employees against unwelcomed sexual advances that create an offensive or hostile work environment. 42 U.S.C. § 2000e-2(a)(1); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). A hostile work environment occurs where sexual harassment is so severe and pervasive it alters the conditions of employment, and creates an abusive work environment. *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1143 (7th

4

Cir. 1997). The harassment must "adversely affect the work performance and the well-being of both a reasonable person and the particular plaintiff bringing the action." *Id.*

## A. Actionable Hostile Environment

Caremark asserts Rosales' conduct does not establish a hostile work environment. To determine a hostile or abusive work environment, the totality of the circumstances must be taken into account. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). Courts should examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* These factors are evaluated from a subjective and an objective point of view. *Id.* Oenning must subjectively perceive the conduct as abusive. *Id.* Furthermore, a reasonable person must objectively find the conduct creates a hostile work environment. *Id.* at 23. "[A] certain amount of vulgar banter, tinged with sexual innuendo is inevitable in the modern workplace, particularly from coarse and boorish workers." *Gleason*, 118 F.3d at 1144.

The crux of Oenning's hostile work environment claim centers on Rosales' behavior from December 1999 to January 2000. Over the course of two months, Oenning contends Rosales blew kisses at her once a day, and flailed his tongue near her face. Pl. 56.1 Facts, Ex. B1 at 39, 43, 46. Rosales called her "grande panocha," and wrote that word on boxes in the warehouse. Oenning asserts grande panocha denotes female genitalia in Spanish. On January 24, 2000, Oenning claims Rosales made humping actions behind her, and asked Oenning if she had "a tight pussy." Pl. 56.1 Facts at ¶ 48.

Oenning's allegations do not create a hostile work environment. The Seventh Circuit has rejected claims of hostile work environment on facts more severe than Rosales' conduct. In *Koelsch*

*v. Beltone Elecs. Corp.*, 46 F.3d 705, 706 (7th Cir. 1994), plaintiff's supervisor rubbed his foot against her during company meetings, grabbed her buttocks, and asked her out to dinner on two occasions. The court found those actions not severe or pervasive enough to constitute a hostile work environment. Similarly, in *Saxton v. American Telephone & Telegraph*, 10 F.3d 526 (7th Cir. 1993), the court declined to find a hostile work environment when plaintiff's supervisor rubbed his hands over plaintiff's knees, forced her to kiss him, and attempted to grab her from behind. Finally, in *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir. 1995), plaintiff's supervisor made grunting sounds when she passed, stated he was lonely in his hotel room, and made other sexually suggestive comments. In declining to find a hostile work environment, the court noted plaintiff's supervisor never touched the plaintiff, did not invite her for sex, did not make threats, and did not expose himself. *Baskerville*, 50 F.3d at 431; *see also Gleason*, 118 F.3d at 1144-45 (no objectively hostile environment when male co-worker referred to females as "bitchy," and commented on female anatomy).

Oenning's allegations primarily consist of Rosales blowing kisses and flailing his tongue. While annoying and crass, these acts do not constitute deeply offensive and pervasive harassment. *Baskerville* instructs sexually suggestive gestures are not sufficient. Likewise, Rosales' use of the term "grande panocha" does not assist Oenning. Distasteful or inappropriate remarks do not constitute deeply offensive and intimidating acts. *Brill v. Lante*, 119 F.3d 1266, 1274 (7th Cir. 1997). In addition, Rosales' humping action occurred only once. An isolated and sporadic incident generally does not constitute pervasive sexual harassment. *Koelsch*, 46 F.3d at 706; *cf. Smith v. Sheahan*, 189 F.3d 529, 535 (7th Cir. 1999) (single incident of sexual assault severe enough to constitute hostile work environment). Rosales never touched Oenning, threatened her, or invited her

for sex. However, even unwanted touching was insufficient in *Koelsch* and *Saxton*. Rosales' crude humping act is analogous to the incident in *Saxton*, which the court found insufficient to establish an abusive environment. Although Rosales' alleged conduct was clearly inappropriate, his gestures and comments were not so severe or pervasive to create an objectively hostile work environment. *See also Adkins v. Kelly-Springfield Tire Co.*, 2001 WL 219636, at *7 (N.D. Ill. Mar. 6, 2001) (hand gestures simulating oral sex, and sexually suggestive names were not deeply offensive and humiliating).

On the subjective prong, Oenning concedes she failed to realize Rosales' actions were harassment until Rosales performed the humping act. Pl. 56.1 Facts, Ex. B1 at 52-53. In addition, she admits she "didn't think [Rosales' conduct] was that bad" before his behavior on January 24, 2000. Def. 56.1 Facts at ¶ 32. Only after that incident did Oenning complain to Coates. Thus, Oenning fails to show she subjectively perceived Rosales' conduct over her two month employment at Caremark as abusive.

## B.     Caremark's Remedial Actions

Alternatively, Oenning's claim fails because she cannot demonstrate Caremark failed to take prompt and appropriate remedial action. In co-employee harassment cases, an employer is liable for sexual harassment in the workplace if the employer knew or should have known of the conduct, unless prompt and appropriate remedial action is shown. *Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 464 (7th Cir. 1990); *Doe v. R.R. Donnelley & Sons*, 42 F.3d 439, 444 (7th Cir. 1994). An employer's legal duty "will be discharged if it takes reasonable steps to discover and rectify" the sexually harassing acts of its employees. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

It is undisputed Caremark displayed posters alerting employees to its sexual harassment policy. When Oenning reported Rosales' behavior to Coates on January 24, 2000, Coates informed Gordon of the allegations. Gordon instructed Coates to conduct an investigation four days later. Coates interviewed Rosales and Oenning's co-workers immediately. Coates reminded Rosales of Caremark's sexual harassment policy. Unable to corroborate Oenning's account, Coates informed Gordon of the results. Coates then gathered the employees, including Rosales, to reiterate Caremark's sexual harassment policy. Caremark's actions were reasonable, timely, and appropriate. *See McCain-Sidney v. Evanston Township High School*, No. 00 C 4057, 2001 WL 1117274, at *7 (N.D. Ill. Sept. 18, 2001) (timely investigation followed by meeting to discuss the alleged behavior were sufficient remedial actions); *Prince v. Manorcare Health Serv., Inc.*, No. 97 C 4537, 1997 WL 790731, at *3 (N.D. Ill. 1997) (counseling and final written warning were sufficient where allegations were found credible). Courts must decide whether the employer's response was reasonable under the circumstances. *Id.* Reasonableness hinges on the seriousness of the harassment alleged. *Baskerville*, 50 F.3d at 432. Oenning does not claim she was sexually assaulted, or inappropriately touched. Instead, her allegations rest on Rosales' comments and gestures. Consequently, Caremark's investigation, reiteration of its sexual harassment policy to Rosales, and holding a department meeting were reasonable remedial acts under the circumstances. Accordingly, summary judgment must be granted on Oenning's hostile work environment sexual harassment claim.

## III.    Retaliation

Under Title VII, an employer is prohibited from discriminating against employees who oppose unlawful employment practices. 42 U.S.C. § 2000e-3. Oenning relies on indirect evidence

of retaliation under the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hunt-Golliday v. Metropolitan Water*, 104 F.3d 1004, 1014 (7th Cir. 1997). In order to state a *prima facie* claim of Title VII retaliation, Oenning must prove (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 397 (7th Cir. 1998). Oenning satisfies the first two elements. Complaining about workplace discrimination is a protected activity, and Oenning's termination constitutes an adverse employment action.

The dispute centers on Oenning's evidence of a causal connection between the complaints and her discharge. Oenning offers the temporal proximity of the relevant events. A close temporal connection between protected activity and adverse employment action is sufficient to establish a *prima facie* case of retaliation. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir. 1997); *White v. Dave & Buster's, Inc.*, No. 98 C 5685, 1999 WL 89572, at *2-3 (N.D. Ill. Feb. 12, 1999). Oenning complained about Rosales' conduct on January 24, 2000. Oenning was fired on January 27, 2000, three days later. Caremark's proffered reason for the termination – Oenning's own misconduct – was not an intervening causal event because it occurred *before* Oenning complained about Rosales' conduct. *See Stohl v. Saint Joseph Health Ctr.*, No. 97 C 4970, 1998 WL 312005, at *16 (N.D. Ill. June 4, 1998). In addition, Oenning advances as evidence Coates' comment that her discharge was to prevent any further harassment at Caremark. Pl. 56.1 Facts at ¶ 9. Oenning contends Coates informed her "this is the reason [he] doesn't think women should be working in the warehouse." *Id.* A reasonable jury could infer from Coates' comments that Oenning was discharged because of her harassment allegations. The temporal proximity combined with Coates' statement

create a genuine issue for trial. Oenning has established a *prima facie* case of unlawful retaliation.

The burden shifts to Caremark to articulate a legitimate, nonretaliatory reason for the discharge. *McClendon*, 108 F.3d at 797. This inquiry melds into the pretext analysis because Caremark asserts Oenning was discharged for sexual harassment and not for complaining about Rosales' conduct. Under the pretext analysis, Oenning must present direct evidence of retaliatory motive, or demonstrate the proffered, non-retaliatory reasons for the discharge: (1) have no basis in fact; (2) did not actually motivate her discharge; or (3) were insufficient to motivate her discharge. *Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir. 1995).

Oenning presents sufficient evidence to raise a genuine issue for trial. As noted above, Coates' comment that Oenning was fired to prevent further harassment complaints is indicative of pretext. Oenning offers additional evidence. Oenning asserts she received a message from Michelle Quilty, a senior agent at Matthews, stating she was fired for attendance reasons. That fact clouds Caremark's proffered reason for Oenning's termination. Moreover, Caremark claims Oenning violated its sexual harassment policy by sitting on Murphy's lap. However, there is no evidence the touching was unwanted. In fact, Oenning testified she was dating Murphy at that time, which raises an inference the touching was consensual. Def. 56.1 Facts, Ex. B1 at 66. Notably, both parties were disciplined for the act – Oenning was fired and Murphy received a written warning. While Oenning's conduct may be inappropriate, it is disputable whether the act was sexual harassment or sufficiently severe to justify Oenning's termination. A reasonable jury could conclude Oenning's harassment allegations bolstered Caremark's proffered reason for the discharge. Moreover, there is no evidence Oenning was disciplined for her job performance. Indeed, Oenning received numerous good performance reviews. Pl. 56.1 Facts at ¶ 10; *see also Maple v. Publications Int'l,*

*Ltd.*, No. 99 C 6936, 2000 WL 1029112 (N.D. Ill. July 25, 2000).

Caremark contends Coates' comments must be ignored because Gordon was solely responsible for discharging Oenning. However, Coates admits he took part in the decision to discharge Oenning on January 27, 2000. *See* Def. 56.1 Facts, Ex. 3 at 21. Similarly, Caremark asserts Gordon was unaware of Oenning's allegations until after her termination. But it is undisputed Coates knew of the allegations by January 24, 2000, three days before Oenning's discharge. Because Coates participated in the termination decision, a reasonable jury could conclude Oenning's sexual harassment complaints contributed to her discharge. Finally, Caremark asserts Coates' comments referred to Oenning's behavior (the lap-sitting incident) and not Rosales' conduct. The disputed meaning behind Coates' comments is a fact question for a jury. Accordingly, summary judgment must be denied on Oenning's retaliation claim.

## CONCLUSION

The motion for summary judgment is granted in part. Summary judgment is granted on the hostile work environment sexual harassment claim and denied on the retaliation claim.

October 9, 2001

ENTER:

Suzanne B. Conlon
United States District Judge

11